IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW HAYNAM | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 25-cv-5339 |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | FOR VIOLATION OF CIVIL RIGHTS |
| City of Chicago and Andrea Kersten | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | **JURY DEMANDED** |

**JURISDICTION AND VENUE**

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331 and 1367.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

**PARTIES**

3. At all times herein mentioned, Plaintiff Matthew Haynam ("Haynam") was within the jurisdiction of this court.

4. At all times herein mentioned Defendant Andrea Kersten (Kersten) was employed by the Civilian Office of Police Accountability (COPA), an agency of the City of Chicago, and was acting under color of state law.

5. At all times herein mentioned, the City of Chicago ("City") was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the City of Chicago maintained, managed, and/or operated the Civilian Office of Police Accountability ("COPA").

## FACTUAL ALLEGATIONS

6. Haynam's employment with the City began in 2011.

7. Haynam's employment with COPA began in April 2017.

8. In 2018, Haynam was promoted to the title of Supervising Investigator at COPA.

9. In 2020, Haynam was promoted to the title of Director of Investigations at COPA.

10. In 2021, Haynam was promoted to the title of Deputy Chief Administrator at COPA.

11. During the course of Haynam's employment at COPA his job performance exceeded the reasonable expectations of the City and Kersten. Haynam's excellent job performance was documented in his performance reviews and resulted in merit-based salary increases and promotions.

12. In 2021, Kersten became the Chief Administrator for COPA. Haynam reported directly to Kersten.

13. COPA's mission was, in part, to conduct impartial investigations to determine whether allegations of malfeasance by members of the Chicago Police Department were well-founded.

14. During the course of his duties for COPA Haynam learned about malfeasance committed by Kersten committed in her capacity as Chief Administrator for COPA.

15. Kersten's malfeasance included, but was not limited to, Kersten's knowing and intentional suppression of information from the public regarding how quality assurance audits

2

revealed COPA's systemic failures related to the mischaracterization of evidence, failure to interview key witnesses, and failure to properly train COPA investigators regarding the applicable standards for use of force by Chicago Police Officers. Furthermore, various statements and actions of Kersten interfered with COPA investigations and demonstrated a bias against police officers that were to be the subject of COPA investigations. Kersten's demonstrated bias against police officers and concealment of COPA's systemic failures undermined the credibility of COPA's investigators and impeded COPA's ability to carry out its mission of conducting impartial investigations. Haynam believed that some of Kerstens actions and statements may be violations of Illinois law.

16. In June 2024, Haynam reported Kersten's malfeasance to the Community Commission for Public Safety and Accountability ("CCPSA").

17. Haynam reported Kersten's malfeasance outside of his chain of command because the CCPSA is a separate agency that had some oversight authority over Kersten.

18. If the CCPSA adopted a resolution of no confidence in Kersten the City Council Committee on Police and Fire would be required to hold a hearing within 14 days at which time it would consider and vote on whether to recommend Kersten be removed. If a majority of the members of the Committee on Police and Fire voted to recommend Kersten's removal, then the City Council would be required to consider and vote on whether to whether to remove Kersten. If a two-thirds majority of all members of the City Council voted to remove Kersten she would be removed.

19. In July 2024, the CCPSA referred Haynam's report of Kersten's malfeasance to the Office of the Inspector General for investigation ("OIG").

20. OIG is a watchdog for the taxpayers of the City and has jurisdiction to conduct inquiries into most aspects of City government. From these inquiries, OIG issues reports of

3

findings and recommendations that ensure City officials and employees are held accountable for the provision of efficient, cost-effective, government operations. OIG further seeks to prevent, detect, identify, expose, and eliminate waste, inefficiency, misconduct, fraud, corruption, and abuse of public authority and resources.

21. On August 15, 2024, Haynam reported Kersten's malfeasance directly to OIG. Haynam reported Kersten's malfeasance outside of his chain of command because OIG is a separate agency that had some oversight authority over Kersten.

22. On August 15, 2024, Haynam informed COPA senior management he had reported Kersten's malfeasance.

23. Haynam made his reports to CCPSA and OIG in his capacity as a private citizen. His employment duties at COPA did not require him to report Kersten's malfeasance to either CCPSA or OIG.

24. Haynam's reports to CCPSA and OIG were solely motivated by a desire to bring Kersten's wrongdoing to the attention of government agencies that had the authority to stop Kersten's malfeasance.

25. On August 30, 2024, Kersten commenced a meeting with Haynam and terminated his employment. Kersten made the decision to terminate Haynam's employment.

26. There was no performance-based reason for Kersten to terminate Haynam's employment.

27. Kersten's decision to terminate Haynam's employment was motivated by her desire to retaliate against Haynam for reporting Kersten's malfeasance to CCPSA and OIG.

4

28. By reason of the above-described acts and omissions, Plaintiff sustained injuries, including but not limited to, humiliation and indignities, lost wages and benefits, and suffered mental and emotional pain and suffering all to his damage in an amount to be ascertained.

29. The aforementioned acts were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

30. By reason of the above-described acts and omissions, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

**COUNT I**
**Plaintiff against KERSTEN for**
**VIOLATION OF FIRST AMENDMENT**

31. Plaintiff hereby incorporates and realleges paragraphs one (1) through thirty (30) hereat as though fully set forth at this place.

32. By reason of Kersten's conduct, Plaintiff was deprived of rights, privileges and immunities secured to him by the First Amendment of the Constitution of the United States and laws enacted thereunder.

33. Kersten violated Plaintiff's First Amendment rights when she terminated Plaintiff's employment as retaliation against Plaintiff for exercising his First Amendment right as a private citizen to report Kersten's malfeasance committed in her capacity as Chief

5

Administrator of COPA. This act of retaliation was in violation of Plaintiff's First Amendment rights. Therefore, Kersten is liable to Plaintiff pursuant to 42 U.S.C. § 1983.

### COUNT II
### Plaintiff Against the City of Chicago For
### RETALIATORY DISCHARGE
### (ILLINOIS WHISTLEBLOWER ACT)

34. Plaintiff hereby incorporates and realleges paragraphs one (1) through thirty (30) hereat as though fully alleged at this place.

35. As alleged above, Plaintiff reported Kersten's malfeasance, including what he believed to be violations of Illinois law, to two government agencies: CCPSA and OIG.

36. Kersten, as an employee of the City and in her capacity as Chief Administrator of COPA, made the decision to terminate Plaintiff's employment.

37. Kersten's decision to terminate Plaintiff's employment was motivated by her desire to retaliate against Plaintiff for reporting her malfeasance to CCPSA and OIG. This retaliation against Plaintiff violated the Illinois Whistleblower Act.

38. This violation of the Illinois Whistleblower Act caused Plaintiff to incur lost wages, lost benefits, and emotional distress.

39. Therefore, the City of Chicago is liable under the Illinois Whistleblower Act.

WHEREFORE, the Plaintiff, by and through his attorneys, ED FOX & ASSOCIATES, Ltd. requests judgment as follows against the Defendants, and each of them:

1. That the Defendants be required to pay Plaintiff's general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiff's special damages;

3. That the Defendants be required to pay Plaintiff's attorney's fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4. That Defendants other than the City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6. That Plaintiff has such other and further relief as this Court may deem just and proper.

BY: s/Garrett Browne

ED FOX & ASSOCIATES, Ltd.
Attorneys for Plaintiff
118 N. Clinton
Suite 425
Chicago, Illinois 60661
(312) 345-8877
gbrowne@efoxlaw.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY: s/Garrett Browne

ED FOX & ASSOCIATES, Ltd.
Attorneys for Plaintiff
118 N. Clinton
Suite 425
Chicago, Illinois 60661
(312) 345-8877
gbrowne@efoxlaw.com