IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW HAYNAM, | ) |
| Plaintiff, | ) ) ) ) Case No. 25 C 5339 |
| v. | ) ) Judge Joan H. Lefkow |
| CITY OF CHICAGO and ANDREA KERSTEN, | ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Matthew Haynam brings this action against defendants, City of Chicago and Andrea Kersten, alleging that defendants retaliated against Haynam for whistleblowing in violation of the First Amendment and the Illinois Whistleblower Act.[1] (Dkt. 1.) Before the court is defendants' motion to dismiss (dkt. 8) the complaint. For the reasons set forth below, the court grants defendants' motion.

**BACKGROUND**[2]

In April 2017, Haynam began his employment with the Civilian Office of Police Accountability (COPA), a City agency tasked with investigating allegations of malfeasance involving members of the Chicago Police Department. There, Haynam received positive performance reviews, merit-based salary increases, and various key promotions, which quickly

---

[1] Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper under 28 U.S.C. § 1391(b).

[2] Except as otherwise noted, the Background section is drawn from Haynam's complaint. Haynam's well-pleaded allegations are accepted as true. *Alarm Detection Sys., Inc.* v. *Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (citation omitted).

moved Haynam up the ranks of the COPA hierarchy. Haynam was first promoted to the role of Supervising Investigator in 2018; he was then promoted to the role of Director of Investigations in 2020; and ultimately, in 2021, he was promoted to the role of Deputy Chief Administrator. Haynam would remain as Deputy Chief Administrator at COPA until his termination on August 30, 2024. As Deputy Chief Administrator, Haynam's duties consisted of investigating alleged police misconduct and supervising other investigators.[3] Further, as Deputy Chief Administrator, Haynam reported directly to the Chief Administrator at COPA.

Kersten became the Chief Administrator for COPA in 2021. Sometime thereafter, and during the course of his duties as Deputy Chief Administrator for COPA, Haynam learned of certain malfeasance being committed by Kersten in her capacity as Chief Administrator. Specifically, Haynam learned as Deputy Chief Administrator that, amongst others, Kersten had intentionally suppressed information from the public regarding certain quality assurance audits that revealed systemic failures at COPA related to the mischaracterization of evidence; had failed to interview key witnesses; and had failed to properly train COPA investigators regarding the applicable standards for use of force by Chicago police officers. Haynam also discovered that Kersten had interfered with at least some COPA investigations and had demonstrated a bias against police officers that were the subject of COPA investigations. Haynam alleges that Kersten's conduct and statements "undermined the credibility of COPA's investigators and impeded COPA's ability to carry out its mission of conducting impartial investigations." (Dkt. 1

---

[3] This allegation is drawn from Haynam's response to defendants' motion to dismiss. In ruling on a motion to dismiss, the court is generally required to look only to the allegations in the complaint. *See Alarm Detection Sys., Inc.*, 930 F.3d at 821. Nevertheless, plaintiffs are permitted, in responding to a motion to dismiss, to "elaborate on [their] factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky* v. *City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Since this new allegation is consistent with Haynam's other allegations, the court considers this additional fact allegation in ruling on defendants' motion to dismiss.

2

¶ 15.) Haynam believed some of Kersten's conduct and statements may have been violations of Illinois law.

As such, in June 2024, Haynam reported Kersten's malfeasance to the Community Commission for Public Safety and Accountability (CCPSA). Haynam elected to report Kersten's malfeasance to CCPSA because it was a separate agency with oversight over Kersten, including the authority to recommend her removal. CCPSA subsequently referred Haynam's report of Kersten's malfeasance to the Office of the Inspector General for investigations (OIG). Haynam then also made a direct report of Kersten's malfeasance to OIG. As with CCPSA, Haynam reported Kersten's malfeasance to OIG because it had oversight authority over Kersten.

On August 15, 2024, Haynam informed COPA senior management that he had reported Kersten's malfeasance. Then, on August 30, 2024, Kersten held a meeting with Haynam and terminated Haynam's employment. Haynam alleges that Kersten, and accordingly the City, terminated him because of his reports to CCPSA and OIG. This action follows.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, plaintiff must clear two hurdles: (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation omitted). At the motion to dismiss stage, the court is required to construe all of the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Virnich* v. *Vorwald*, 664 F.3d 206, 212 (7th Cir.

3

2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Haynam introduces two counts against defendants. Count I is a First Amendment retaliation claim against Kersten, alleging that Kersten engaged in unlawful retaliation when she terminated him following his reports to CCPSA and OIG. Count II is a claim against the City under the Illinois Whistleblower Act based on the same alleged conduct.

### I. Count I – First Amendment Retaliation

The threshold question in any First Amendment retaliation claim is whether the speech at issue was constitutionally protected. *Kubiak* v. *City of Chi.*, 810 F.3d 476, 481 (7th Cir. 2016). This is a question of law, not fact. *McArdle* v. *Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013). A public employee's speech only receives First Amendment protection where "(1) he spoke as a private citizen rather than in his capacity as a public employee; (2) he spoke on a matter of public concern; and (3) his interest in expressing the speech is not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Lett* v. *City of Chi.*, 946 F.3d 398, 400 (7th Cir. 2020) (citations and quotations omitted).

Here, Haynam's First Amendment claim fails at the first prong. As the Supreme Court has held, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti* v. *Ceballos*, 547 U.S. 410, 421 (2006). For this analysis, courts are directed to take a practical view. *Kubiak*, 810 F.3d at 481. To determine whether speech was made pursuant to a public employee's official duties,

4

the court is to consider the employee's level of responsibility and the duties the employee would be expected to perform—an inquiry that is not limited to merely the formal job description. *Id.*; *Abcarian* v. *McDonald*, 617 F.3d 931, 937 (7th Cir. 2010) (citing *Tamayo*, 526 F.3d at 1092). This is because the First Amendment does not protect "speech that owes its existence to a public employee's professional responsibilities." *Houskins* v. *Sheahan*, 549 F.3d 480, 491 (7th Cir. 2008) (quoting *Garcetti*, 547 U.S. at 421).

Haynam has provided minimal detail regarding his role as Deputy Chief Administrator at COPA, but the information he has provided is sufficient to determine that his speech was intimately tied to, and resulted from, his professional responsibilities. Haynam, a high-ranking figure in the COPA hierarchy, reported Kersten for alleged instances of malfeasance involving, among others, her suppression of audit results regarding the treatment of evidence, her failure to interview key witnesses during investigations, and her failure to properly train COPA investigators regarding the applicable standards for use of force by Chicago police officers. But as Haynam has also alleged, COPA's mission is "to conduct impartial investigations to determine whether allegations of malfeasance by members of the Chicago Police Department were well-founded," (dkt. 1 ¶ 13), and as Deputy Chief Administrator, his professional duties included supporting this mission by investigating alleged police misconduct and supervising other investigators. Further, Haynam only learned of Kersten's alleged malfeasance "during the course of his duties for COPA." (*Id.* ¶ 14.) As such, Haynam reported conduct that was directly affecting his ability to perform his job responsibilities, including impairing his ability to effectively investigate police misconduct and to supervise other investigators; in other words, speech that was part of ("owes its existence to") those job responsibilities. *See Garcetti*, 547 U.S. at 421–22.

5

Binding precedent indicates that such speech falls outside of the protections of the First Amendment. The Seventh Circuit has repeatedly stated that plaintiffs speak as public employees, and not private citizens, when the at-issue speech involves matters that directly affect their area of responsibility. *See Ulrey* v. *Reichhart*, 941 F.3d 255, 259–60 (7th Cir. 2019) (collecting cases). This includes instances where the public employee's speech implicates misconduct by a superior and includes instances where the employee's job duties did not explicitly require them to investigate or report such misconduct. In *McArdle*, for example, a school principal's speech regarding misconduct of a superior was held to be unprotected by the First Amendment when she had reported, amongst others, on the improper use of school funds for personal purposes and other misconduct regarding admissions procedures for nonresident students. 705 F.3d at 753–54. Although the plaintiff in *McArdle* argued that her job duties did not require her to make such a report, the court concluded that she "spoke about matters that directly affected her area of responsibility" and thus her speech was unprotected. *Id.* at 754. The court further noted that such speech is made "as an employee even where investigating and reporting misconduct is not included in [the] job description or routine duties." *Id.*

Considered against the backdrop of his professional responsibilities, Haynam's speech merely reflected "an employee's attempt to improve [his] work environment." *Kubiak*, 810 F.3d at 482. Thus, even taking as true that Haynam's job duties did not explicitly require him to report Kersten's malfeasance, Haynam spoke as a public employee rather than a private citizen in reporting such malfeasance. *Id.*

Nevertheless, Hayman attempts to argue that his speech was made as a private citizen because of the format it took: He initially made his reports to two outside bodies, CCPSA and OIG, rather than internally at COPA. This argument is unavailing. The Seventh Circuit has held

that where a public employee speaks pursuant to his official duties, such speech is unprotected even in contexts where the speech was made only to an external body with oversight responsibility. *See Tamayo*, 526 F.3d at 1091. Here, in relevant part, Haynam alleges that each of CCPSA and OIG had oversight authority over Kersten. Thus, the mere fact that Haynam made his reports to external bodies does not convert his reports on matters affecting his professional responsibilities from speech made as a public employee to speech made as a private citizen.[4]

As such, plaintiff has pleaded himself out of his First Amendment retaliation claim. Based on Haynam's well-pleaded allegations, the court finds that Haynam's speech was made as a public employee, and not as a private citizen. It was thus unprotected by the First Amendment. As a result, the court dismisses Count I.

## II. Count II – Illinois Whistleblower Act

Since the court has dismissed Haynam's federal claim, his claim under the Illinois Whistleblower Act will be dismissed for lack of supplemental jurisdiction. *See Dietchweiler by Dietchweiler* v. *Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) ("[W]hen the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims"). Accordingly, the court dismisses Count II.

---

[4] Haynam relies on several non-binding decisions to argue that employees do not speak pursuant to their official duties when reporting to OIG. Setting aside that Haynam only made his report to OIG after it had already been transferred to OIG by CCPSA, which calls into question whether Haynam's report to OIG was truly separate from his report to CCPSA, each of the cases Haynam cites may be readily distinguished. In *Logan*, the plaintiff lacked Haynam's supervisory authority and otherwise had significantly different professional responsibilities. *Logan* v. *City of Chi.*, No. 17 C 8312, 2018 WL 5279304, at *1 (N.D. Ill. Oct. 24, 2018). In *Conway*, the plaintiff "allege[d] no … formal oversight relationship" by OIG. *Conway* v. *City of Chi.*, No. 20 C 4966, 2021 WL 4206793, at *7 (N.D. Ill. Sept. 16, 2021). In *Valdez*, the alleged speech involved testimony, which the Seventh Circuit has independently held falls outside of a public employee's official duties. *Valdez* v. *City of Chi.*, No. 20 C 388, 2020 WL 4365646, at *5 (N.D. Ill. July 30, 2020); *see Chrzanowski* v. *Bianchi*, 725 F.3d 734, 739–40 (7th Cir. 2013). Finally, the *Corona* court only ruled on whether the plaintiff's speech addressed a matter of public concern, the second prong of the public speech analysis, and did not address whether the speech itself was made as a private citizen or a public employee. *See Corona* v. *City of Chi.*, No. 21 CV 6777, 2023 WL 5671661, at *5 (N.D. Ill. Aug. 31, 2023).

## **CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion to dismiss (dkt. 8) is granted. Haynam's federal claim is dismissed with prejudice for failure to state a claim. Haynam's state law claim is dismissed for lack of supplemental jurisdiction.

Date: January 29, 2026

_____
U.S. District Judge Joan H. Lefkow